UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR ODALE BROCKMAN,

     Plaintiff,

v.                              Case No. 17-10399
                                  Honorable Victoria A. Roberts

MARK MCCULLICK, *et al.*,

     Defendants.

_____/

## ORDER: (1) DENYING ALLEN'S MOTION TO DISMISS [ECF No. 43]; and (2) GRANTING IN PART AND DENYING IN PART TOWN'S MOTION TO DISMISS [ECF No. 44]

### I.    INTRODUCTION

Plaintiff Omar Odale Brockman ("Brockman"), a state prisoner proceeding *pro se*, filed this civil rights action against six individuals under 42 U.S.C. § 1983. The only remaining defendants are Renee Allen ("Allen") and Angela Town ("Town"; collectively, "Defendants"), who are food service workers at the Michigan Department of Corrections ("MDOC") St. Louis Correctional Facility. Defendants separately move to dismiss the amended complaint; both motions are fully briefed.

The Court **DENIES** Allen's motion to dismiss [ECF No. 43] and **GRANTS IN PART** and **DENIES IN PART** Town's motion to dismiss [ECF No. 44].

Brockman's First Amendment retaliation claims against Defendants survive; his Eighth Amendment cruel and unusual punishment claim and Fourteenth Amendment procedural due process claim against Town are **DISMISSED**.

## II.   FACTS

At all times relevant to this case, Brockman was incarcerated at MDOC's St. Louis Correctional Facility, where he held a work assignment in food services. Defendants are employees of Trinity Services Group, Inc. ("Trinity"), a private company contracted to provide food service for the MDOC.  Brockman alleges the following facts in the amended complaint.

While organizing food service records on October 25, 2016, Brockman noticed daily worksheets from the previous day were misplaced.  Brockman approached Town to see if she could search the office for the worksheets.  When Brockman approached Town, she was gathering cases of powdered drinks from the commissary room.  Town held the cases under her arm, and Brockman held the commissary door for her.  As Town passed through the commissary doorway, she yelled out that she was dropping a box.  Brockman instinctively reached out, caught the box, and handed it back to Town. Although Brockman never touched Town's body, she yelled, "Get away from me, you grabbed my hips."  Brockman left Town without further incident.

Approximately 30-40 minutes later, however, Brockman observed Town excitedly talking to MDOC Corrections Officer Paradice.  After the discussion, Officer Paradice approached Brockman and told him that he was "laying [Brockman] in" (i.e., taking him to his cell) for the rest of the day.  As Paradice escorted Brockman to his housing unit, another officer, Sergeant Monford, stopped them and ordered Brockman to "cuff up." Monford told Paradice that Town said Brockman "assaulted her by grabbing her butt." Monford took Brockman to the segregation unit and told him that he was being detained

for sexually assaulting Town, that an inspector would meet with him under the Prison Rape Elimination Act ("PREA"), and that he may be criminally charged.

Brockman explained his side to the Segregation Unit Manager, who investigated the matter. After watching the video recording of the incident, the Segregation Unit Manager released Brockman from segregation because the video showed he never touched Town. Brockman was in the segregation unit for 20 to 30 minutes.

When Brockman returned to the dining hall, he told Town's supervisor, Food Service Director ("FSD") Charles Parker, about Town's false accusation and that, because he could have faced criminal charges or charges under the PREA had there not been a camera in the area, "he would file a grievance against Town." [ECF No. 39, PgID 438].

Allen did not work on October 25, 2016; her first day back to work after the above incident was October 29. On October 29, she escorted Brockman to the food service office to provide him paperwork. While in the office, she told Brockman that she heard about the incident with Town and that "you know that Town did not lie on you." [*Id.*, PgID 437]. Brockman responded that if there was any question whether Town's accusations were true after reviewing the video footage, he would still be in the hole, and that "the problem we have around here is that people are to[o] concerned with the color of people's skin." [*Id.*]. Allen replied, "you know [Town] didn't lie, hurry up so I can get back on the floor." [*Id.*].

On November 1, 2016, Classification Director Julius Mayfield met with Brockman and told him that he was being terminated from his work assignment under MDOC Policy Directive 05.01.100, Section FF, due to two negative work evaluations within 30

days.  The negative evaluations were from Town and Allen.  This was the first time Brockman was notified of the negative evaluations.

Town submitted her negative work evaluation on October 25, 2016, the same day as her false assault allegation.  In her evaluation, Town states that on October 25, Brockman was eating out of the Kosher kitchen, being argumentative, and making unwanted compliments to female staff.  Allen wrote her evaluation on October 29, her first day back to work; she states that Brockman was argumentative, did not leave the office when asked, and made an offensive racial remark.  Those were Brockman's first negative work evaluations in food service.

Brockman filed this case in February 2017.  He alleges four counts in the amended complaint: (1) a Fourteenth Amendment procedural due process claim against Town; (2) an Eighth Amendment cruel and unusual punishment claim against Town; (3) a First Amendment retaliation claim against Town; and (4) a First Amendment retaliation claim against Allen.

Town and Allen filed separate motions to dismiss; they are fully briefed.

## III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Rule 8(a)(2), the statement of the claim must be plausible.  Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations. *Id.*

The Court holds pleadings filed by *pro se* litigants to "less stringent standards" than those drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, a *pro se* complaint still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

## IV.  ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts that "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). Defendants challenge Brockman's claims under both prongs of this test.

### A.  State Actor

As employees of Trinity, Defendants say they are private actors; therefore, they say all of Brockman's claims fail because they were not acting under color of state law. The Court disagrees.

"This argument has been rejected by other courts that have analogized the role of a private food service company to that of a private entity providing medical services."

5

*See Horn v. Hunt*, No. 15-220, 2015 WL 5873290, at *4-5 (S.D. Ohio Oct. 8, 2015) (collecting cases). Trinity contracted with the State of Michigan to provide food-related services to prisoners in state custody, traditionally a state function. Accordingly, Trinity and its employees can be sued under § 1983 as state actors. *See id.* (rejecting Aramark employee's argument that he was not a state actor for purposes of § 1983 because Aramark assumed the state's obligation to provide food service to inmates); *Dykes v. Marshall*, No. 14-1167, 2016 WL 1059618, at *3 (W.D. Mich. Mar. 17, 2016).

**B.     First Amendment Retaliation Claims against Defendants**

Brockman labels counts three and four in the amended complaint as "Access to Court," and he alleges that he "was retaliated against by [Defendants] for seeking access to courts in violation of the [] U.S. Const Amend. 1." [ECF No. 39, PgID 440]. Although Brockman labelled these counts "Access to Court," the language he used to plead these claims, his reference to the First Amendment, and – most importantly –his allegations throughout the complaint make it clear that he is alleging a First Amendment retaliation claim against Defendants.

"A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment." *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir. 2011). "[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that

conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct." *Eby*, 481 F.3d at 440 (quoting *Thaddeus-X*, 175 F.3d at 394).

Defendants argue that Brockman's retaliation claim fails on all three elements. The Court disagrees. When construing the amended complaint liberally, as the Court is required to do, Brockman alleges sufficient facts for each element to satisfy his burden at the pleading stage.

### i. Protected Conduct

Brockman sufficiently alleges he engaged in protected conduct. In the amended complaint, Brockman alleges that he believes the negative "work reports were produced only for the purpose of retaliating against him, because [he] told FSD Charles Parker that he would file a grievance against Town for her conduct on 10/25/2016 falsely accusing him of sexually assaulting her." [ECF No. 39, PgID 438].

It is clear that "[p]risoners have a First Amendment right to file grievances and access the courts without suffering retaliation for so doing." *Rodgers v. Hawley*, 14 Fed. Appx. 403, 409-10 (6th Cir. 2001) (citing *Thaddeus-X*, 175 F.3d at 388); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000) ("An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf"). *See also King v. Williams*, No. 12-15116, 2013 WL 4718335, at *3 (E.D. Mich. Sept. 3, 2013) ("Access to courts, and therefore the filing of grievances, is one such protected right.").

The right to file a grievance has been read more broadly to include activities such as threatening to file a grievance. *See Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("The Court believes that when it comes to protecting First Amendment rights, including the right to petition the government for redress, there is little difference

between retaliating against a person for filing a grievance, and retaliating for threatening to file one."); *King*, 2013 WL 4718335, at *3 ("it has been held that the mere fact of a complaint being expressed orally rather than in writing does not deprive that complaint of its constitutional protection"). Indeed, "a clearly stated intention to file a grievance amounts to protected conduct within the meaning of *Thaddeus-X*." *Id.*

By alleging he told FSD Parker he was going to file a grievance against Town, Brockman engaged in protected conduct. *Id.* The first element is satisfied.

### ii. Adverse Action

Brockman alleges that Defendants filed the negative work evaluations to retaliate against him because he said he was going to file a grievance against Town, and that the negative evaluations caused him to lose his job. Defendants argue that Brockman did not suffer an adverse action because there is no constitutional right to a prison job.

While Defendants are correct that there is no constitutional right to a prison job, they mistakenly focus solely on that. *Walton v. Gray*, 695 Fed. Appx. 144, 146 (6th Cir. 2017) ("'Where the district court's analysis went astray . . . was in focusing on the wrong constitutional right; i.e., the nonexistent right to prison employment versus the existing right to avoid retaliation for exercising the First Amendment right to file grievances against prison officials.'" (internal brackets omitted) (quoting *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010))). "In a retaliation claim such as this . . . the harm suffered is the adverse consequences which flow from the inmate's constitutionally protected action. Instead of being *denied* access to the courts, the prisoner is penalized for actually exercising that right." *Thaddeus-X*, 175 F.3d at 394 (emphasis in original). *See also Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir.1997) (in a First Amendment

retaliation claim, the injury is "the retaliatory accusation's chilling effect on [the plaintiff's] First Amendment rights." Moreover, as explained above, retaliation for exercising the constitutional right to file a non-frivolous grievance "is itself a violation of the Constitution." *Thaddeus-X*, 175 F.3d at 394.

The relevant question is whether the loss of Brockman's prison work assignment is *sufficiently* adverse to maintain a First Amendment retaliation claim.

In the First Amendment context, an action is "adverse" if "it is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Smith v. Yarrow*, 78 Fed. Appx. 529, 540 (6th Cir. 2003). "[B]ecause 'there is no justification for harassing people for exercising their constitutional rights,' the deterrent effect of the adverse action need not be great in order to be actionable." *Lappin*, 630 F.3d at 473 (quoting *Thaddeus-X*, 175 F.3d at 397). The adverse action need not be one specific action; a plaintiff can allege that various incidents together amount to an adverse action. *See Griffin v. Berghuis*, No. 11-14876, 2016 WL 1165826, at *7 (E.D. Mich. Jan. 3, 2016) ("the individual incidents suffered by plaintiff are sufficient to constitute adverse action when considered in the aggregate"). Moreover, in addition to the individual action of a defendant, the Court can also consider the reasonably foreseeable consequences of that action. *See Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005).

The Sixth Circuit "has indicated that loss of a prison job can constitute an adverse action for retaliation purposes." *See, e.g., Walton*, 695 Fed. Appx. at 146 (citing *Siggers-El*, 412 F.3d at 702). *See also Walker v. Brewer*, No. 13-349, 2014 WL 1117835, at *2 (W.D. Mich. Mar. 20, 2014) ("In this case, Plaintiff alleges that

9

Defendant's false allegation of criminal conduct caused Plaintiff to be terminated from his high-paying job, leaving Plaintiff without any means to receive income. The Court concludes that such action is not simply 'de minimis,' but instead would be capable of deterring a person of ordinary firmness from exercising his First Amendment rights.").

Brockman alleges in the amended complaint that "he needed his prison job," [*see* ECF No. 39, PgID 435]; he further states in his response brief that the loss of his prison job was a "grievous loss" that resulted in him being "unable to purchase copies from the law library" (i.e., the loss of his job affected his ability to access the courts) [*see* ECF No. 45, PgID 605]. The Court finds that Brockman's allegations demonstrate that Defendants' negative work reports – which caused him to lose his job – would be "capable of deterring a person of ordinary firmness from exercising his [First Amendment rights]." *See Yarrow*, 78 Fed. Appx. at 540; *Siggers-El*, 412 F.3d at 701-02 (holding that a transfer that would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts, was an adverse action).

Accordingly, Brockman alleges a sufficiently adverse action to satisfy the pleading standard and survive the motions to dismiss. This is especially true considering that "[w]hether action is sufficiently adverse to deter a person of ordinary firmness is generally a question of fact and thus reserved for the jury." *See King*, 2013 WL 4718335, at *3 (citing *Bell v. Johnson*, 308 F.3d 594 (6th Cir.2002) ("in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law . . . unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury")).

### iii. Causation

The Court also finds that Brockman sufficiently pled that Defendants took the adverse actions at least in part because he engaged in protected conduct. Under counts three and four, Brockman alleges that Defendants retaliated against him for seeking access to courts. He also alleges that he believed Defendants filed the negative work evaluations "only for the purpose of retaliating against him." [ECF No. 39, PgID 438].

In their motions to dismiss, Defendants argue that Brockman's retaliation claims fail under this element because "there is absolutely no evidence whatsoever that [they] . . . did anything retaliatory with respect to any constitutional right," [ECF Nos. 43, 44, PgID 497, 555], and "[t]here is no evidence that any protected conduct was the motivating factor behind any harm that may have been suffered here," [ECF No. 44, PgID 556].

Defendants mistakenly assume that Brockman must produce *evidence* at the motion to dismiss stage. It is well established that a motion to dismiss only tests whether the complaint contains a "statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The amended complaint does.

Construing the complaint liberally, Brockman alleges that Defendants filed the negative work evaluations against him because he told FSD Parker that he was going to file a grievance against Town. While there is no direct evidence of this allegation, no *evidence* is necessary at the pleading stage. Furthermore, "retaliation rarely can be supported with direct evidence of intent. That is why circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is

appropriate to consider when [assessing a retaliation claim]." *See Carter*, 647 F. Supp. 2d at 835 (internal quotation marks, citations and brackets omitted). Indeed, "temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (citation and internal quotation marks omitted).

Here, the timing of the negative work evaluations demonstrate the plausibility of Brockman's retaliation claims against Town and Allen. *See Carter*, 647 F. Supp. 2d at 835 (finding that temporal proximity was enough to satisfy the causation element *at summary judgment*, where the alleged adverse action was taken the same day as the protected conduct). Town filed her negative work evaluation the same day Brockman engaged in protected conduct; Allen filed her evaluation the first day she returned to work after Brockman engaged in the protected conduct. The fact that Defendants filed their negative work evaluations the earliest possible time after Brockman engaged in protected conduct is indirect evidence of a causal connection and is sufficient to satisfy the third element at this stage – especially when coupled with the fact that Brockman had never received a negative work evaluation in food services prior to Defendants' evaluations. *See id.*

Moreover, the fact that Brockman alleges he told FSD Parker – and not Defendants – that he was going to file a grievance against Town is not detrimental to his claims. When read in conjunction with Brockman's retaliation claim and other allegations in the amended complaint, Brockman's allegation that Defendants filed the negative work evaluations because he told FSD Parker he was going to file a grievance

against Town necessarily infers that Defendants were aware of his intention to file a grievance against Town.[1]

Brockman pleads sufficient facts to satisfy the causation element – i.e., he sufficiently alleges that Defendants filed the negative work evaluations at least in part because he said he was going to file a grievance against Town.  *See Eby*, 481 F.3d at 442 (finding that dismissal of the complaint at the pleading stage was improper because, after discovery, the plaintiff may have been able to establish that retaliation was a motivating factor for the misconduct ticket).

Construing the amended complaint liberally, Brockman plausibly alleges First Amendment retaliation claims against Defendants.

### C.    Fourteenth Amendment Due Process Claim against Town

Brockman alleges Town's false sexual assault allegation caused him to suffer "two deprivations of his state-created liberty interest without due process."  Although Brockman alleges "two deprivations," his due process claim only goes on to list his time in segregation as a deprivation of his liberty interest.  Based on Brockman's Eighth Amendment claim, the Court assumes the second deprivation he complains about is that he was placed "at risk of suffering the onus of MDOC PREA."  This claim is not sustainable on either ground.

"In order to show the deprivation of a liberty interest protected by the Fourteenth Amendment, a prisoner must show that the act extended the duration of his sentence, or that he suffered an atypical, significant deprivation."  *Ingram v. Jewell*, 94 Fed. Appx.

---

[1] In Brockman's original complaint, he alleges FSD Parker told Town to write a negative work evaluation against him.  [*See* ECF No. 1, PgID 9 n. 1].  Brockman appears to have omitted this allegation and other allegations regarding Parker in his amended complaint, because Parker was dismissed from the case before Brockman filed the amended complaint.

271, 273 (6th Cir. 2004). Accepting the facts in the amended complaint as true, Brockman fails to allege he was deprived of a *protected* liberty interest. The "deprivations" he alleges – i.e., spending 20 to 30 minutes in segregation and being placed *at risk* of being charged under the PREA – did not extend the duration of his sentence or impose an atypical and significant hardship on him. *See id.*

Accordingly, Brockman's due process claim fails as a matter of law and is dismissed.

### D. Eighth Amendment Cruel and Unusual Punishment Claim against Town

Brockman's final claim is that Town subjected him to cruel and unusual punishment in violation of the Eighth Amendment because her false sexual assault allegations placed him "at risk of suffering the onus of MDOC PREA." This claim fails.

"The Sixth Circuit has held that the filing of a false misconduct report does not constitute punishment under the Eighth Amendment." *Ford v. Kennerly*, No. 16-243, 2016 WL 3049311, at *19 (W.D. Mich. May 31, 2016) (citing *Williams v. Reynolds*, 198 F.3d 248 (6th Cir. 1999) (unpublished table decision) ("neither verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment") (citations omitted); *Bruggeman v. Paxton*, 15 Fed. Appx. 202, 205 (6th Cir. 2001) (holding that a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment violation)).

Brockman's Eighth Amendment claim fails as a matter of law and is dismissed.

**V.      CONCLUSION**

The Court **DENIES** Allen's motion to dismiss [ECF No. 43] and **GRANTS IN PART** and **DENIES IN PART** Town's motion to dismiss [ECF No. 44].

Brockman's First Amendment retaliation claims against Defendants survive; his Eighth Amendment cruel and unusual punishment claim and Fourteenth Amendment procedural due process claim against Town are **DISMISSED**.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  June 29, 2018