UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR ODALE BROCKMAN,

    Plaintiff,

v.                                      Case No. 17-10399
                                        Honorable Victoria A. Roberts

MARK MCCULLICK, *et al.*,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' TOWN AND ALLEN'S MOTION FOR SUMMARY JUDGMENT [ECF No. 72]

**I.  INTRODUCTION**

Omar Odale Brockman ("Brockman"), a state prisoner, filed this civil rights action against six individuals under 42 U.S.C. § 1983. He alleges retaliation in violation of his First Amendment rights. The remaining defendants are Renee Allen ("Allen") and Angela Town ("Town"; collectively, "Defendants"); they were food service workers at the Michigan Department of Corrections ("MDOC") St. Louis Correctional Facility where Brockman worked. Brockman says he was fired from his job because he threatened to and did file a grievance against Defendants.

The Court finds there are genuine issues of fact concerning any causal connection between Brockman's grievance activity, negative evaluations,

1

and termination. The Court **DENIES** this motion for summary judgment. [ECF No. 72].

II.     **FACTS**

At all times relevant, Brockman was incarcerated at MDOC's St. Louis Correctional Facility. He worked in the facility's kitchen as an inmate clerk. Defendants are employees of Trinity Services Group, Inc. ("Trinity"), a private company contracted to provide food service for the MDOC.

Inmates who work in the kitchen are not Trinity employees. However, Trinity employees review them on a monthly basis using a Prisoner Program and Work Assignment Evaluation, also called a 363 Evaluation, ("363 evaluation"). These evaluations can also be issued by Trinity or MDOC employees for disciplinary reasons.

On October 25, 2016, Brockman organized food service records and noticed daily worksheets from the previous day were misplaced. Brockman could not search for the records in the back office without supervision. He approached Town to ask if she would escort him to the office. She was then gathering cases of powdered drinks from the commissary room.

Brockman held the commissary door open for Town. As she passed through the doorway, she started dropping a box of drinks. Brockman says

that he instinctively reached out to catch the box before it fell to the floor. Town originally told MDOC staff that Brockman came into her personal space, and his fingertips grazed her backside area. However, in her deposition, Town said she was not even sure that Brockman touched her. [ECF No. 72-3, PageID. 936].

Shortly after the incident, Town spoke to MDOC Corrections Officer Paradice ("Paradice"). In her deposition, Town testified that she asked Paradice to call the Control Center to review the security footage of the incident.

After the discussion with Town, Paradice approached Brockman and told him that he was "laying [Brockman] in" (i.e., taking him to his cell) for the rest of the day. As Paradice escorted Brockman to the housing unit, another officer, Sergeant Monford, stopped them and ordered Brockman to "cuff up." Monford took Brockman to the segregation unit and told him that he was being detained for sexually assaulting Town, that an inspector would meet with him under the Prison Rape Elimination Act ("PREA"), and that he may be criminally charged.

With Brockman in segregation, Town reviewed the security footage of the incident with MDOC staff in the control center. The footage did not show Brockman grazing Town's backside with his fingertips. Brockman was then

released from the segregation unit; he was in the segregation unit for 20 to 30 minutes.

When Brockman returned to the dining hall, he told Town's supervisor, Food Service Director Charles Parker ("Parker"), that Town falsely accused him. Brockman also said he could have faced criminal charges or charges under the PREA had there not been a camera in the area, and that he planned to file a grievance against Parker and Town. Parker disputes that Brockman spoke to him about the incident on that same day; he says it happened a couple of days later. Parker also asserts he did not tell Town that Brockman planned to file a grievance against her.

The same day, Town submitted a negative 363 evaluation against Brockman. The evaluation was not based on the incident. Rather, Town wrote that Brockman: (i) made toast earlier in the morning in the kosher kitchen, which is off limits and a violation of MDOC rules; (ii) argued with Trinity staff; (iii) complimented female staff members; and (iv) invaded Town's personal space. Brockman acknowledges that he did make toast in the kitchen that morning; however, in Parker's deposition, Parker said it was a common occurrence for inmates to violate this rule, and he could not remember ever issuing a negative 363 evaluation for such conduct. In fact,

4

he described submitting a negative 363 evaluation for such conduct as an "extreme response."

On October 28, 2016, Brockman filed a grievance against Town. He alleged she made false allegations of sexual assault. Brockman's grievance was denied.

Defendant Allen did not work on the day of the incident. She returned to work on October 29th - four days later. This day, Allen escorted Brockman to the food service office to get paperwork. While in the office, Allen told Brockman that she heard about the incident and said Town would not lie about such a thing. Brockman responded that if there was any question about the truth, given the video footage, he would still be in segregation. Town says Brockman made a racially prejudicial statement, but he disputes it. Allen then wrote a negative 363 evaluation allegation against Brockman for: (i) being argumentative, (ii) not leaving the office when asked, and (iii) making an offensive racial remark.

On November 1, 2016, Classification Director Julius Mayfield met with Brockman and told him that because he had the two negative work evaluations from Town and Allen within 30 days, he was terminated from his work assignment under MDOC Policy Directive 05.01.100, Section FF.

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for its motion; it must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the "mere existence of a scintilla of evidence in support of the [non-movant's] position"; the evidence must be such that a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the

6

summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

IV. **ANALYSIS**

"A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment." *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir. 2011). "[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

**A. Brockman's Retaliation Claim Raises A Genuine Issue of Material Fact**

The right to file a grievance has been read to include even the threat to file a grievance. *See Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) ("The Court believes that when it comes to protecting First Amendment rights, including the right to petition the government for redress, there is little difference between retaliating against a person for filing a grievance, and retaliating for threatening to file one."); *King v. Williams*, No. 12-15116, 2013 WL 4718335, at *3 (E.D. Mich. Sept. 3, 2013) ("the mere fact of a complaint being expressed orally rather than in writing does not deprive that complaint of its constitutional protection").

To state a First Amendment retaliation claim, a plaintiff must plausibly allege: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him 'that would deter a person of ordinary firmness from continuing to engage in that conduct'; and (3) . . . the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

For purposes of this motion, the parties agree Brockman satisfied the first two elements of his First Amendment retaliation claim: (1) Brockman engaged in protected conduct when he threatened to file and filed an MDOC grievance, and (2) Brockman's termination constituted an adverse action.

The disagreement arises over the third element: that Brockman's termination was the "adverse action motivated at least in part" by his grievance. *Id.* at 394. Defendants argue: (1) Brockman failed to establish a causal link between his grievance and termination; and (2) his termination resulted from wrongdoing in his job.

"[T]he third element—a causal connection between the protected activity and the adverse action—needs to be established by [Brockman] to complete [his] affirmative case." *Thaddeus–X*, 175 F.3d at 399. However, "retaliation 'rarely can be supported with direct evidence of intent.'" *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted). As a result,

"[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate" for the Court to consider to determine whether there is a genuine issue of fact. *Thaddeus–X*, 175 F.3d at 399.

Brockman presents sufficient circumstantial evidence to complete his affirmative case and overcome this motion for summary judgment. He presents both temporal proximity and disparate treatment evidence that raise a genuine issue of material fact with respect to the causal connection between his conduct and the adverse action taken against him.

### 1. Temporal Proximity

There is a question of fact whether Town or Allen had knowledge of Brockman's intent to file a grievance. Brockman asked Parker to submit a grievance against Town for filing a false report. When Parker refused, Brockman threatened to file a grievance against Town and Parker. Brockman's request and Town's negative report occurred in proximity to one another. Parker also admitted in his deposition that he "briefly" spoke with Town shortly after the incident, but he could not remember the extent of the conversation.

And, although Allen asserts now that she had no knowledge of Brockman's grievance, in her deposition Allen said she had a conversation

with Parker about Brockman's intent to file a grievance; Town also warned Trinity employees to "be careful of Brockman." Town filed a negative 363 evaluation on her first day at work following the incident, which is the day after Brockman filed his grievance against Town. Because the protected conduct and Defendants' negative 363 evaluations occurred in proximity to one another, there is an inference of retaliation.

When viewing evidence and drawing inferences in favor of Brockman, there is a question of fact regarding whether Town and Allen – despite their denials – knew of Brockman's intention to file a grievance. *See Kochins*, 799 F.2d at 1133.

### 2. Disparate Treatment

Brockman's claims of retaliatory treatment are further bolstered by his claim that he was treated differently than other inmates.

Town wrote a 363-evaluation based in part on Brockman using the kosher kitchen. During his deposition, Parker stated that inmates "would often take things from that area that weren't normally accessible." [ECF No. 72-4, PageID. 988]. Though he described this as a common occurrence, Parker could not remember ever issuing a negative 363 evaluation for such an offense. Parker further noted that writing a negative 363 evaluation for such conduct was an "extreme response." *Id.* Town even admitted in her

deposition, "I can't write the 363 on him touching me because there is no evidence of that, but he was in the kosher kitchen that morning eating toast." [ECF No. 72-4, PageID. 994].

Here, a combination of: (1) the timing between when Brockman filed his grievance against Town and his termination; and (2) a negative 363 evaluation for a routine offense that others are not punished for, establishes a genuine issue of material fact that could support a jury verdict in favor of Brockman. *Thaddeus-X*, 175 F.3d at 400.

Since Brockman meet his burden to establish that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the Defendants. *Thaddeus–X*, 175 F.3d at 399. If the Defendants can show that they would have taken the same actions in the absence of the protected activity, Town and Allen are entitled to prevail on summary judgment. *Id.* (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Because there is a genuine dispute as to whether Defendants would have submitted a negative 363 evaluation in the absence of the protected activity, Brockman survives summary judgment on his First Amendment retaliation claim.

### B. Brockman States a Cognizable Claim for Compensatory and Punitive Damages

Defendants say Brockman is not entitled to compensatory damages because he has not established a violation of any constitutional right. However, as discussed, the Court finds that Brockman presented a question of fact on his First Amendment retaliation claim. *See King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (holding that a plaintiff may seek compensatory damages for violations of the First Amendment). Brockman states a cognizable claim for compensatory damages.

A jury may also find that Brockman is entitled to punitive damages. "[A] key feature of punitive damages [is] that they are never awarded as of right, no matter how egregious the defendant's conduct." *Smith v. Wade*, 461 U.S. 30, 56 (1983). "Rather, once the plaintiff proves that the defendant's conduct triggers consideration of punitive damages, the factfinder makes the 'discretionary moral judgment' whether or not to award punitive damages." *Id.* (quoting *King*, 788 F.3d at 217). Because a jury has the discretion to award punitive damages based upon the Defendants' conduct, Brockman's claim for punitive damages is to be decided by the factfinder, rather than the Court.

## V. CONCLUSION

The Court **DENIES** Allen and Town's motion for summary judgment. Brockman presents a genuine dispute of material fact regarding his First Amendment retaliation claims. The case will proceed to trial.

**IT IS ORDERED**.

S/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: April 6, 2020